UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ELIGIO JOSE GRATEROL GUEDEZ,<br><br>                              Petitioner,<br><br>v.<br><br>KEVIN RAYCRAFT et al.,<br>                              Defendants. | Case No. 26-11285<br>Honorable Shalina D. Kumar<br>Magistrate Judge Patricia T. Morris |

**OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS
(ECF NO. 1)**

## I.      Introduction

Petitioner Eligio Jose Graterol Guedez ("Petitioner") filed a petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging he is being

unlawfully detained by the Respondents at the Monroe County Jail in

violation of the Due Process clause of the Fifth Amendment. *See generally,*

ECF No. 1. The petition is fully briefed, ECF Nos. 4, 5, and the Court is

satisfied that the issues have been adequately briefed thereby making a

hearing unnecessary. *See* E.D. Mich. 7.1(f)(2).

## II.    Background

According to the petition, Petitioner, a citizen of Venezuela, legally entered the United States in February 2021 with a B-2 visitors visa and has resided in Detroit, Michigan since his arrival. ECF No. 1. In September 2022, Petitioner applied for and was granted Temporary Protected Status ("TPS") until September 2025. During the summer of 2025, Petitioner re-registered for TPS. In January 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") and transferred to the Monroe County Jail in Monroe, Michigan where he has remained in custody. *Id*. at ¶ ¶ 21, 22. In March 2026, he filed for Asylum and Withholding of Removal. The application is still pending. *Id*. at ¶ 23.

On March 4, 2026, Respondents held a bond hearing before Immigration Judge ("IJ") Mark Jebson. *Id*. at ¶ 24. Despite providing "over 100 pages of evidence demonstrating significant ties to the community, offering a U.S. Citizen sponsor, and other relevant evidence such as receipts for applications and a copy of federal taxes" and an absence of a criminal record, the IJ determined Petitioner was a flight risk without providing any reasoning for the decision and denied his bond. *Id*. at ¶ ¶ 24, 25; *see also* ECF No. 1-4, PageID.36. Notably, the Department of

Homeland Security ("DHS") filed an incomplete form I-213, which failed to include Petitioner's TPS status from 2022 to 2025, and his re-registration. *Id*. at ¶ 26; ECF No.1-3. Petitioner remains detained.

Petitioner argues that his continued detention violates his right to due process under the Fifth Amendment. ECF No. 1. Specifically, he contends that his custody determination hearing on March 2026 did not satisfy due process requirements because, among other things, IJ Jebson placed the burden of proof for the determination of whether he posed a flight-risk on Petitioner, not the government.

## III. Discussion

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

## B.    Burden of Proof

Section 1226(a) of Chapter 8 of the United States Code "is silent as to what burden of proof applies in bond hearings and who bears that burden." *Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 621 (W.D. Mich. 2026) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021)). The Supreme Court held that 8 U.S.C. § 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings but left open the question of whether the Due Process Clause so requires. *Id*. at 622 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)).

The BIA "found it reasonable to apply the standard [under 8 C.F.R. § 236.1(c)(8)] to § 1226(a) bond hearings," "placing the burden on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *Id*. at 621 (internal quotation omitted) (cleaned up). However, 8 C.F.R. § 236.1(c)(8) applies by its terms to officers concerning the issuance of arrest warrants and requires an alien to demonstrate "to the satisfaction of the officer" that a discretionary release by the arresting officer would not pose a danger to property or persons and that the alien is likely to appear for any future proceeding. Nevertheless, the Court is not

bound by the BIA's decision to extend the regulatory standard of proof applied to a discretionary release by an arresting officer to one issued by an IJ after a bond hearing. *Id*. at 621–22 (citing 8 C.F.R. § 236.1(c)(8)). Courts need not defer to an agency interpretation of a statute. *Id*. at 622 (citing *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024)).

Moreover, a due process challenge to the standard or burden of proof applied at a bond determination hearing may only be addressed by the Court because the BIA lacks the authority to consider constitutional claims. *Id*. at 621 (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006)). Conversely, the Court lacks jurisdiction over the IJ's discretionary detention decision under 8 U.S.C. § 1226(e) and may only review whether the bond hearing satisfied the Fifth Amendment's guarantee of procedural due process. *See Demore v. Kim*, 538 U.S. 510, 517 (2003). Accordingly, the Court will analyze what burden and standard of proof must apply for a bond hearing to satisfy due process requirements.

The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025). Noncitizens, such as Petitioner, are thus entitled to its protections. *See id*. Detention pending removal is "a constitutionally valid aspect of the

deportation process," but that detention must comport with due process. *See Demore*, 538 U.S. at 523.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *see also Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026). Because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action," civil detention, i.e., that without a punitive purpose, "constitutes a significant deprivation of liberty" requiring stringent due process protection. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Thus, pretrial detention, civil commitments, and other "narrow," non-penal circumstances in which the government seeks to detain "persons who pose a danger to others or the community" require the government to prove by "clear and convincing evidence" that the person to be detained is "demonstrably dangerous to the community" and "that no conditions of release can reasonably assure the safety of the community or any person." *Id*. at 80-81; *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (holding that pretrial detention will be permitted under the Due Process

Clause "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").

Additionally, the *Mathews v. Eldridge* balancing test for the adequacy of process supports the government bearing the burden of proof. 424 U.S. 319 (1976); *see United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) (applying *Mathews* balancing test in the context of immigration proceedings). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 785 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026) (citing *Mathews*, 424 U.S. at 335).

Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). Additionally, the first factor tips further in a detainee's favor when he is "held in conditions indistinguishable from criminal incarceration." *See*

*Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara*, 10 F.4th at 28 and *Velasco Lopez*, 978 F.3d at 851).

Petitioner is being held at the Monroe County Jail, alongside criminal inmates including pre-trial criminal arrestees and incarcerated prisoners serving criminal sentences. He is undoubtedly "experiencing the deprivations of incarceration, including loss of contact with friends and family, loss of income earning . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Id*. Under these circumstances, his liberty interest is intensified because "the deprivation of liberty that individuals detained under section 1226(a) experience is not the result of a criminal adjudication." *See Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 599 (W.D.N.Y. 2025) (citing *Velasco Lopez*, 978 F.3d at 851).

The length of incarceration under § 1226(a) affects the weighting of the first *Mathews* factor, as well. *See Soto-Medina*, 817 F.3d at 625 (citing *Hernandez-Lara*, 10 F.4th at 29–30). Although removal proceedings have an end point such that the liberty interest of a noncitizen detained under § 1226(a) could be assessed as slightly less weighty than that of individuals facing indefinite and prolonged detention, in reality,"[t]he exact length of detention under [§] 1226(a) is impossible to predict, can be quite lengthy"

and "is frequently prolonged because it continues until all proceedings and appeals are concluded[,] even where an individual has prevailed and the Government appeals." *Id*. (quoting *Hernandez-Lara*, 10 F.4th at 29– 30 and *Velasco Lopez*, 978 F.3d at 852) (cleaned up). Indeed, the Sixth Circuit explicitly factored in length of incarceration when it recently ruled, "[w]here immigration detention becomes needlessly prolonged and appears to no longer effectuate the regulatory goals of civil immigration detention, courts routinely hold that the Due Process Clause requires an individualized bond hearing to justify a noncitizen's continued detention." *Lopez-Campos*, 175 F.4th at 732–33.

Given Petitioner's strong private interest in his freedom, his confinement in a jail alongside those charged and convicted with crimes despite not being accused of any crime himself, and the uncertain, already lengthy duration of that confinement, the Court agrees with a growing number of courts nationally that the first *Mathews* factor for satisfying due process favors requiring the government to bear the burden of proof for justifying continued detention. *See id.* at 625–27.

"Placing the burden on the government also satisfies the second *Mathews* factor, reducing the risk of erroneous deprivation." *Id*. at 626. The

Court recognizes that Respondents have "an interest in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 690) (internal quotation marks and alteration omitted). Yet, "the choice . . . is not between imprisonment and the alien living at large" but "between imprisonment and supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 696. Generally, "proving a negative can often be more difficult than proving a cause for concern" and this is especially so for proving a lack of danger and risk of flight in a bond proceeding. *Hernandez-Lara*, 10 F. 4th at 31; *see also Elkins v. United States*, 364 U.S. 206, 218 (1960). Additionally, those facing removal have no right to counsel, will likely experience difficulty in gathering evidence on their own behalf and often face language barriers. *Hernandez-Lara*, 10 F.4th at 30. "For all these reasons, a detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound." *Id*. at 31.

Finally, under the third *Mathews* factor, as the Court recognizes, the "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings."

*Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). Nevertheless, any detention must "bear a reasonable relation to its purpose." *Id*. (quoting *Zadvydas*, 533 U.S. at 690) (cleaned up); *see also Lopez-Campos*, 175 F.4th at 732–33 (where detention "*appears to no longer effectuate the regulatory goals of civil immigration detention*," due process demands "an individualized bond hearing to justify continued detention.") (emphasis added). As the Second Circuit aptly observed:

> [T]he Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. On the contrary, shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose . . . . When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees. The Government articulates no public interest that any of this serves and we see none.

*Velasco Lopez*, 978 F.3d at 854–55. In short, placing the burden of proof on the detainee risks many instances of needless detention, "entailing substantial social and financial costs." *Hernandez-Lara*, 10 F.4th at 33. These costs far outstrip the additional costs of imposing the burden of proof of detainee's risk of danger and flight on the government. *See Soto-Medina*, 817 F. Supp. 3d at 626–27 (collecting cases).

In sum, "the *Mathews* factors establish that due process requires the government to bear the burden of demonstrating that Petitioner is a flight risk or danger to the community to deny bond." *Id*. at 627 (citing *Miranda v. Garland*, 34 F.4th 338, 378 (4th Cir. 2022) (Urbanski, J., concurring part)). Accordingly, this Court agrees with "the majority of courts in finding that due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention." *Id.* at 622 (collecting cases) (emphasis in original); *see also Perez-Perez v. Raycraft*, 2026 WL 1121930 (E.D. Mich. Apr. 24, 2026).

Additionally, due process requires the government to show a noncitizen to be a flight risk *by clear and convincing evidence* before detaining him on that basis. *Soto-Medina*, 817 F. Supp. 3d at 628 (citing *Velasco Lopez*, 978 F.3d at 856-57). "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Accordingly, courts apply the clear and convincing evidence standard to immigration detentions as they do in several analogous heightened individual liberty contexts, such as involuntary psychiatric commitments, termination of

parental rights, deportations, and denaturalizations. *See id*. at 432; *see also Hernandez-Lara*, 10 F.4th at 40 (collecting cases).

Turning to the case at bar, the Court first notes that IJ Jebson's order is silent as to the burden and standard of proof he applied in finding Petitioner to be a flight risk, forcing the Court to seek answers in the transcript of the bond hearing. *See* ECF No. 4-8. The Court's review of that transcript reveals a bond hearing devoid of explanation and analysis, but the IJ did articulate his finding that Petitioner had not carried *his* burden of proof. *Id*. at PageID.212. Thus, Petitioner's bond hearing violated his Fifth Amendment due process rights by continuing his detention without clear and convincing evidence from the government that he posed a flight risk.

Respondents resist this conclusion, citing a recent unpublished opinion from the Sixth Circuit. *De Leon Trejo v. Bullock*, No. 26-5186 (6th Cir. May 14, 2026); ECF No. 6-1. They argue this decision supplies persuasive authority for finding that Petitioner's bond hearing satisfied due process requirements because it provided "a meaningful opportunity to present his case and respond to the government's argument."[1] ECF No. 6-

---

[1] After reviewing the transcript from the March 2026 bond hearing, the Court questions whether this hearing would clear the low due process threshold articulated in the *De Leon Trejo* order. The IJ did not permit the

1, PageID.240. The Court disagrees that the Sixth Circuit's recent ruling on a habeas petitioner's motion for release pending appeal is applicable to the case at bar.

First, and most importantly, the Court of Appeals' *De Leon Trejo* ruling does not address the burden of proof applied at the bond hearing, the paramount issue before this Court. Second, to the extent the ruling suggests that due process in an immigration bond hearing may be satisfied so long as the alien's risk of flight and danger to property or person is considered, and the hearing "was a real one, not a sham or a pretense," the Court finds it to be at odds with published Sixth Circuit authority.

In *Silvestre-Gregorio*, the Sixth Circuit determined that immigration proceedings threatening a noncitizen's liberty interest are sufficient to trigger the protection of the Due Process Clause. 983 F.3d at 852; *see also Lopez-Campos*, 175 F.4th at 734 (noncitizen petitioners have a liberty interest to be free from detention). In determining whether sufficient due

---

interpreter to translate any of Petitioner's testimony into English, repeatedly asked Petitioner, in English, the same question, which was not relevant to any potential flight risk, told the interpreter to tell the Petitioner to stop speaking as he tried to answer the IJ's questions in Spanish, decided the answer Petitioner ultimately gave in English was untrue and an evasion, and, on that basis, denied his request for bond, finding him to be a flight risk. ECF No.4-8, PageID.211–12.

process was afforded, courts are bound by precedent, if any, or if addressing a due process issue of first impression, they are to "apply the three-factor test the Supreme Court set out in *Mathews*," to make this assessment. *Silvestre-Gregorio*, 983 F.3d at 852. The *De Leon Trejo* order did neither.

Days before issuing that unpublished order, the Sixth Circuit decided *Lopez-Campos* and designated that opinion for publication. 175 F.4th 713. Although the applicable burden and standard of proof for bond hearings was not at issue in that case, the Court of Appeals cited with approval a Third Circuit case which held that once detention has become unreasonably prolonged, the government must put forth clear and convincing evidence that continued detention is necessary. *Id*. at 733 (citing *German Santos v. Warden Pike Cnty. Facility*, 965 F.3d 203, 213 (3d Cir. 2020)). Although not binding on the appellate court, the district courts in this circuit have also assigned the heightened—clear and convincing evidence—burden of proof to the government because the detainee's liberty interest at stake in bond detention hearings is so significant. *See Soto-Medina*, 817 F. Supp. 3d at 624–29; *see also Rodriguez v. Greene*, 2026 WL 574961, at *13–15 (N.D. Ohio Mar. 2, 2026) (collecting cases).

Even if *Lopez-Campos* does not serve as binding precedent on this issue, the *De Leon Trejo* order strays from the Sixth Circuit's instruction for analyzing the sufficiency of process afforded to a petitioner in the absence of binding precedent because it does not apply the *Mathews* factors. *See Silvestre-Gregorio*, 983 F.3d at 852. Accordingly, the Court finds that the unpublished *De Leon Trejo* order is not consistent with published Sixth Circuit authority and thus is neither binding nor persuasive.

In conclusion, the Court finds that the government has the burden to establish by clear and convincing evidence that Petitioner is a flight risk or danger to the community. The IJ presiding over the Petitioner's March 2026 bond determination hearing violated his Fifth Amendment due process rights by continuing his detention based on Petitioner's failure to show that he was not a flight risk.

## IV.   Conclusion

For the reasons discussed above, the Court **GRANTS** the petition.

The Court **ORDERS** Respondents to provide Petitioner with a new individualized bond hearing under § 1226(a), before a different Immigration Judge, **on or before June 18, 2026**. In this new hearing, the government shall bear the burden of establishing by clear and convincing evidence that

Petitioner is either a danger to the community or a flight risk. Any bond decision made must be individualized, meaning after and reflective of the consideration of all evidence provided. Further, the IJ must consider alternatives to detention in lieu of or in addition to bond.

If Respondents fail to provide Petitioner with such a bond hearing by June 18, 2026, the Court **ORDERS** them to immediately release Petitioner from custody.

Finally, the Court **ORDERS** Respondents to file a status report with the Court to certify compliance with this order **within 48 hours of the bond hearing or release, but not later than noon on June 22, 2026**. The status report shall inform the Court whether and when Petitioner was released from detention or provided with a bond hearing as specified in this order. If a bond hearing occurs, the status report shall indicate the identity of the presiding IJ, the date on which it was held, if bond was granted or denied, and if denied, the reasons for that denial. If bond is denied, the Court **ORDERS** the Respondents to provide the Court with a transcript of the individualized bond hearing no later than two weeks after the bond hearing was conducted.

**IT IS SO ORDERED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: June 11, 2026