UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ELIGIO JOSE GRATEROL GUEDEZ,<br>Petitioner,<br><br>v.<br><br>KEVIN RAYCRAFT et al.,<br>Defendants. | Case No. 26-11285<br>Honorable Shalina D. Kumar<br>Magistrate Judge Patricia T. Morris |

**ORDER FINDING SHOW CAUSE ORDER UNSATISFIED (ECF NO. 11) AND RELEASING PETITIONER FROM CUSTODY**

On June 12, 2026, this Court granted Petitioner Eligio Jose Graterol Guedez's ("Petitioner") petition for writ of habeas corpus, finding that Respondents[1] violated the Petitioner's rights under the Due Process clause

[1] Petitioner named Kevin Raycraft ("Raycraft"), director of enforcement and removal operations at the U.S. Immigration and Customs Enforcement ("ICE") Detroit field office, along with Markwayne Mullins ("Mullins"), Secretary of the Department of Homeland Security ("DHS") and Todd Blanche ("Blanche"), U.S. Attorney General as Respondents in his habeas petition. *See* ECF No. 1. Respondents correctly note in their response to the Court's Order to Show Cause that the Court failed to address their argument that all respondents other than petitioner's immediate custodian should be dismissed. As this Court and others within the circuit have ruled, the local ICE field office director is not the only proper respondent in habeas actions. *See, e.g., Giminez Gonzales v. Raycraft*, 807 F. Supp. 3d 755, 762–63 (E.D. Mich. 2025); *Quintero-Campos v. Raycraft*, 2026 WL

of the Fifth Amendment by unlawfully detaining him in the Monroe County Jail. *See generally,* ECF No. 7. Specifically, the Court found that the Petitioner's bond hearing did not provide the Petitioner with due process before continuing his detention because it placed the burden of proof regarding the Petitioner's flight risk on the Petitioner. *Id*. at PageID.258. To satisfy due process requirements at bond hearings held under 8 U.S.C. § 1226(a), the government, not the detainee, must prove by clear and convincing evidence that the detainee is a flight risk or presents a danger to the community before continuing detention. *See id*.

Accordingly, the Court ordered Respondents to either release Petitioner or provide him with "a new individualized bond hearing under § 1226(a)" at which "the government shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the

---

1862002, at *6 (W.D. Mich. June 29, 2026) (collecting cases). To prevent an evasive transfer of the detainee and to ensure a respondent with authority to enforce the court's grant of habeas relief, district courts decline to dismiss higher-level officials from habeas actions such as this. *See Quintero-Campos*, 2026 WL 1862002, at *6 (declining to dismiss Secretary of DHS); *Giminez Gonzales*, 807 F. Supp. 3d at 762–63 (same for Attorney General); *Velasco Palacios v. Raycraft*, 2026 WL 561041, at *3 (E.D. Mich. Feb. 27, 2026) (same for both Secretary of DHS and Attorney General). Accordingly, the Court declines to dismiss any of the Respondents from this action.

community or a flight risk." *Id*. at PageID.258–59. It further ordered that "any bond decision must be individualized," defined as one made "after and reflective of the consideration of all *evidence provided*." *Id*. at PageID.259 (emphasis added). The Court further ordered the Immigration Judge ("IJ") to "consider alternatives to detention in lieu of or in addition to bond." *Id*. The Court also required the Respondents to submit a status report on the outcome of any bond hearing and a copy of the transcript. *Id*.

On June 16, 2026, a second bond hearing took place after which IJ Ian Simons issued an order denying bond. Respondents submitted the order, and later, the transcript from that bond hearing to the Court, as ordered. ECF Nos. ECF No. 8-1, 9-1. The order denying bond and the transcript from the hearing revealed that the bond hearing did not comply with the Court's ordered directives for satisfying due process requirements. The Court thus ordered Respondents to show cause why the Court should not immediately release Petitioner. ECF No. 10.

Respondents argued in response to the Court's show cause order that they had complied with the Court's order and had provided Petitioner with a second bond hearing according to the terms specified by the Court. They argued further that the Court should vacate its show cause order

because the second bond hearing satisfied due process requirements, and that the Court lacks jurisdiction to review the immigration court's decision. *See* ECF No. 11.

Petitioner argued at the show cause hearing that the IJ for the second bond hearing again imposed the wrong burden and standard of proof and thus Petitioner continued to be denied due process. The Court agrees.

First, the Court was not divested of jurisdiction when it granted Petitioner conditional relief under its earlier order. *See Smith v. Davis*, 2026 WL 1601830, at *2 (6th Cir. June 4, 2026). "District courts retain jurisdiction to execute their judgments if necessary—in other words, they may change their conditional orders into absolute orders if the state does not fulfill the mandate directed in the habeas courts order." *Id*. (quotation omitted). "When the state fails to cure the error, i.e., when it fails to comply with the order's conditions, a conditional grant of a writ of habeas corpus requires the petitioner's release from custody." *Id*. (quotation omitted). Federal courts also have jurisdiction to review an immigration judge's bond denial to assess its constitutionality*. See Diallo v. Raycraft*, ___ F. Supp. 3d ___, 2026 WL 1487286, at *1 (S.D. Ohio May 18, 2026) (citing *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020). Accordingly, the Court is

satisfied that it retained jurisdiction over Petitioner's habeas petition after its order granting him conditional relief.

The Court finds that the second bond hearing did not comport with the Court's order or with the due process requirements the order imposed. The second bond order continued to impose the incorrect standard and burden of proof. Although the IJ order denying bond begins by declaring that the Respondents "met their burden to establish by clear and convincing evidence [that Petitioner] is a substantial flight risk," that statement signals only pretextual compliance with the Court's order and the due process requirements it intended to enforce. Ensuing language in the order explicitly acknowledges that the IJ did not, in fact, place the burden of proof on the Respondents as the Court ordered it to do. "The [Immigration] Court recognizes the burden of proof was placed on [Respondents] for this particular bond hearing; *however*, the fact that [Petitioner] now faces an order of removal *requires the Court to evaluate the entire record* for information relevant to the issue of flight risk. . . ." ECF No. 8-1, PageID.264 (emphasis added). As that statement foretells, and the hearing transcript demonstrates, the IJ did not require Respondents to supply clear

and convincing evidence of flight risk but instead took it upon himself to cull the record for such evidence.

True to his word, the IJ relied upon *evidence supplied by the Petitioner* to support that he *did not* pose a flight risk. With the onus placed on the Petitioner, the IJ then rejected his evidence and based his decision on the fact that Petitioner's asylum application was denied and he was ordered removed, as well as a determination that Petitioner had no viable bond sponsor, had only been present in the U.S. a short time, and failed to comply with the terms of a temporary visa. However, rejecting Petitioner's evidence that he is not a flight risk continues to impose the burden of proof on Petitioner, contravening both the Court's order and the dictates of due process.

The IJ's other findings—lack of viable sponsor, short time in the U.S., and violation of immigration law—are not derived from evidence adduced or even the arguments advanced by Respondents. A review of the hearing transcript reveals that the order denying the Petitioner's applications and ordering him removed to Venezuela was the only evidence submitted by the Respondents before the hearing. ECF No. 9-1, PageID.277. Respondents did not identify any evidence within or outside of the hearing

record to support their position that Petitioner posed a flight risk. Instead, Respondents' counsel argued that the immigration judge who ordered Petitioner removed found him not to be credible and hypothesized that Petitioner's removal order gave him greater incentive to not appear for immigration proceedings and thus made him a greater flight risk.[2] He also speculated that Petitioner under-reported his income on his tax returns and that he worked after his work authorization expired, citing an I-213 form. When Petitioner's counsel complained that the I-213 was not part of the record, Respondent conceded that the form had been uploaded only to the record of the previous bond hearing. During the hearing, Respondents'

[2] Factors which Immigration Judges are to look to in determining whether a noncitizen merits release on bond, as well as the amount of bond that is appropriate, include any or all of the following: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *See Matter of R-A-V-P*, 27 I&N Dec. 803, 804 (BIA 2020).

counsel uploaded the I-213 form to the record for this hearing.[3] Counsel for Petitioner correctly noted to the IJ that argument alone is not evidence and that Respondents failed to provide any evidence, let alone clear and convincing evidence that Petitioner posed a flight risk. *Id*. at PageID.281, 286, 304.

The second bond order also gives no indication that the IJ considered less restrictive alternatives to detention, ignoring the Court's instruction to do so. The Court may enforce its prior order for habeas relief and order the release of a petitioner "if the proceedings, on their face, clearly reflect that [the government] did not bear the appropriate burden of [proof] or that the IJ did not meaningfully consider less restrictive alternatives to detention." *Diallo*, ___ F. Supp. 3d at ___, 2026 WL 1487286, at *2; *see also, Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025) (ordering immediate release as appropriate remedy for violation of petitioner's due process rights) (collecting cases).

Because Respondents have failed to afford Petitioner due process in two separate bond hearings, presided over by two different immigration

[3] The IJ accepted the I-213 as record evidence but found it to be immaterial to the issue of flight risk.

judges, and have otherwise defied the Court's earlier order, the Court **ORDERS** Respondents to immediately release Petitioner from custody as relief under his habeas petition.

The Court **ORDERS** Respondents to file a status report with the Court to certify compliance with this order **within 48 hours of the release, but not later than noon on August 21, 2026**.

**IT IS SO ORDERED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: August 17, 2026